**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JOHN MICELI,

               Plaintiff,

v.                                    Case No. 6:15-cv-1186-Orl-37KRS

DYCK-O'NEAL, INC.; and LAW
OFFICES OF DANIEL C.
CONSUEGRA, P.L.,

               Defendants.
_____

## ORDER

This cause is before the Court on the following:

1.     Defendant's Motion for Judgment on the Pleadings (Doc. 32), filed January 29, 2016;

2.     Plaintiff's Opposition to Defendant Dyck-O'Neal, Inc.'s Motion for Judgment on the Pleadings [Doc. 32] (Doc. 35), filed February 22, 2016; and

3.     Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Judgment on the Pleadings (Doc. 38), filed March 3, 2016.

## BACKGROUND

In March 2007, Plaintiff John Miceli entered into a transaction with Homecomings Financial, LLC ("**Homecomings**") for the purchase of his home ("**Property**"), whereby Homecomings lent him money in exchange for a mortgage ("**Mortgage**"). (Doc. 27, ¶ 9; Doc. 27-1, pp. 8–24.) After Plaintiff defaulted on the Mortgage, GMAC Mortgage, LLC ("**GMAC**") filed suit in state court to foreclose on the Mortgage in October 2009. (Doc. 27, ¶ 10; Doc. 27-1, pp. 1–3.) GMAC claimed that it owned an interest in the Mortgage and

sought a deficiency decree. (Doc. 27, ¶ 10; Doc 27-1, pp. 3–5.) On June 15, 2010, the

foreclosure court granted final judgment in favor of GMAC in the amount of $207,096.07

("**Oustanding Debt**") and reserved jurisdiction to rule upon a deficiency decree

("**Foreclosure Judgment**"). (Doc. 27, ¶12; Doc. 27-1, pp. 47–52.) Thereafter, between

June and August 2010:

- GMAC purchased the Property at a foreclosure sale for $100.00 (Doc. 27, ¶ 14; Doc. 27-1, pp. 55–57);

- GMAC assigned its bid to the Property to Federal National Mortgage Association ("**FNMA**") for one dollar ($1.00) (Doc. 27, ¶ 13; Doc. 27-1, pp. 53–54; Doc. 27-2, p. 1); and

- The Clerk of Court issued a Certificate of Title of the Property to FNMA (Doc. 27, ¶ 15; Doc. 27-1, pp. 59–60).

On May 20, 2014, FNMA assigned its interest in the Foreclosure Judgment and in

any deficiency on the Mortgage to Defendant Dyck-O'Neal ("**Dyck**")—a non-registered

debt collecting agency—for one dollar ($1.00). (Doc. 27, ¶¶ 5, 20, 43, 44, 46, 51, 52;

Doc. 27-1, p. 99.)

On June 24, 2014, Dyck initiated a separate action against Plaintiff in state court

seeking a deficiency judgment on the Mortgage ("**Deficiency Action**").[1] (*Id.* ¶ 19;

Doc. 27-1, pp. 61–62.) Based on its representation that the Property was appraised at

---

[1] The Law Offices of Daniel C. Consuegra, P.L. ("**Law Firm**") represented Dyck in the Deficiency Action. (Doc. 27, ¶ 21.) Plaintiff originally named the Law Firm as a defendant in the action (*see* Docs. 1, 27), but he has since purported to voluntarily dismiss the claims against the Law Firm pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) (*see* Doc. 31 ("**Stipulation**")). Plaintiff's Stipulation is ineffective because it was not signed by Dyck. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii) (requiring that *all* parties who have appeared sign a voluntarily stipulation of dismissal). However, the Court construes the Stipulation as a request for voluntary dismissal pursuant to Rule 41(a)(2) and finds that it is due to be granted. Accordingly, the claims against the Law Firm are dismissed with prejudice. *See* Fed. R. Civ. P. 41(a)(2).

$86,000.00 at the time of the foreclosure sale ("**Appraisal**"), Dyck sought a deficiency judgment of $121,096.07 plus interest ("**Alleged Debt**"). (Doc. 27, ¶ 25; Doc. 27-1, pp. 61–62, 72–98.) However, Plaintiff alleges that, prior to initiating the Deficiency Action, FNMA provided documentation to Dyck indicating that the fair market value ("**FMV**") of the Property was $209,465.16, as demonstrated by a Form 1099-A ("**Form 1099A**"). (Doc. 27, ¶ 22; *see also* Doc. 27-2, p. 6.) On April 13, 2015, the Deficiency Action court entered summary judgment in Plaintiff's favor. (Doc. 27, ¶ 5; Doc. 27-2, p. 80.)

From May 2014 through March 2015, even while the Deficiency Action was pending, Dyck made monthly negative reports about Plaintiff to three major Credit Reporting Bureaus—Experian, Transunion, and Equifax (collectively, the "**CRAs**")— claiming that Plaintiff owed it the Alleged Debt. (Doc. 27, ¶¶ 16, 28, 31, 34, 59.) Plaintiff alleges that these negative reports: (1) affected his credit rating and his ability to obtain credit at a lower interest rate (*id.* ¶ 18); (2) prevented him from refinancing his home mortgage at a lower interest rate (*id.* ¶¶ 29, 32, 60, 68, 76, 92, 101; *see also* Doc. 27-1, p. 65); and (3) caused him $46,281.60 in damages (Doc. 27, ¶¶ 33, 60, 68, 76, 82, 92, 101, 108).

On June 19, 2015, Plaintiff initiated this action in state court. (*See* Doc. 2.) Dyck removed the action to this Court on July 23, 2015, invoking the Court's federal question jurisdiction. (Doc. 2.) The operative Amended Complaint asserts against Dyck six causes of action under the Fair Debt Collection Practices Act ("**FDCPA**"), one cause of action under the Florida Consumer Collection Practices Act ("**FCCPA**"), and one cause of action under the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**"). (Doc. 27.) Dyck answered the Amended Complaint and asserted various affirmative defenses, including

that the state law claims are: (1) barred by the doctrine of litigation immunity ("**Litigation Privilege Defense**"); and (2) preempted by the Fair Credit Reporting Act ("**FCRA Defense**"). (Doc. 29.)

On January 29, 2016, Dyck moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Doc. 32.) The Motion has been fully briefed (*see* Docs. 32, 35, 38) and is ripe for adjudication.

## STANDARDS

"After the pleadings are closed . . . a party may move for judgment on the pleadings" pursuant to Rule 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). In determining whether a party is entitled to judgment on the pleadings, the Court accepts as true all material facts alleged in the non-moving party's pleading, and it views those facts in the light most favorable to the non-moving party. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citing *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367, 1370 (11th Cir.1998)). "Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Perez,* 774 F.3d at 1335 (citing *Stanton v. Larsh,* 239 F.2d 104, 106 (5th Cir.1956)).

## DISCUSSION

Dyck moves for judgment on the pleadings as to each of the eight claims. (Doc. 32.) The Court will address the federal FDCPA claims first and the state law claims second.

## I.   FDCPA Claims

To prevail on an FDCPA claim, a plaintiff must adequately plead and ultimately prove three elements: (1) the plaintiff has been "the object of collection activity arising from consumer debt"; (2) "the defendant is a debt collector as defined by the FDCPA"; and (3) "the defendant has engaged in an act or omission prohibited by the FDCPA." *Kennedy v. Nat'l Asset & Risk Mgmt., LLC*, No. 3:13-CV-101-J-12MCR, 2013 WL 5487022, at *2 (M.D. Fla. Sept. 30, 2013). Dyck does not dispute the first two elements—that Plaintiff was the object of a collection activity arising from consumer debt (Doc. 27, ¶¶ 18, 39–41) and that Dyck is a debt collector (*id.* ¶¶ 43–46). It does, however, dispute the third element as to Plaintiff's FDCPA claims, which are each predicated on a different act or omission by Dyck allegedly prohibited by the FDCPA.

### a.   Count Two

Count Two alleges that Dyck violated **15 U.S.C. § 1692(e)(2)(A)**, which prohibits debt collectors from falsely representing the "character, amount, or legal status of any debt," by representing to the CRAs that the Alleged Debt was valid despite knowing that to be false. (*Id.* ¶¶ 63–66.) In support of his contention that Dyck knew the Alleged Debt was invalid, Plaintiff alleges that: (1) "a deficiency judgment never issued against [him] and in favor of [Dyck]" ("**First Theory**"); and (2) the Form 1099A evidenced that there was

no deficiency ("**Second Theory**").[2] (*See id.* ¶¶ 56, 64, 72, 80, 87, 96, 105, 106.)

Dyck argues that the First Theory does not support Plaintiff's contention that the

Alleged Debt was invalid or give rise to claims under the FDCPA. (Doc. 32, pp. 4–7.) The

Court agrees in part. A debt collector does not have to obtain a deficiency judgment before

attempting to collect a deficiency. *See DeFrancesco v. Veripro Solutions Inc.*, No. 2:14-

cv-27-FtM-29DNF, 2014 WL 4387570, at *3 (M.D. Fla. Sept. 5, 2014) ("Given that the

mortgage holder has the right to file suit to collect a deficiency balance, it would be illogical

to prevent the mortgage holder from contacting the debtor in an attempt to recover the

deficiency balance prior to filing suit.") Thus, the Alleged Debt is not invalid solely because

Dyck had not received a deficiency judgment. However, construing all reasonable

inferences in favor of Plaintiff, the Court interprets Plaintiff's allegation to mean that Dyck

lacked a deficiency judgment which would support and evidence the correctness of the

amount of the Alleged Debt. In this respect, the Court finds that the First Theory supports

Plaintiff's claim.

Further, as to Plaintiff's Second Theory, the Court accepts as true the inference

from Plaintiff's allegations that the Form 1099A put Dyck on notice that the value of the

Property was worth more than the Outstanding Debt and, therefore, that Dyck knew that

there was no deficiency balance. For purposes of this Motion, the Court finds that the

allegations supporting the First and Second Theories are sufficient to support a cause of

---

[2] Plaintiff also alleges that Dyck knew the Alleged Debt was invalid because the foreclosure court retained jurisdiction to determine a deficiency judgment, and, thus, the Deficiency Action court lacked jurisdiction to hear the claim. (Doc. 27, ¶ 64.) While the most recent Florida state court opinion on this issue supports the contention that the Deficiency Court lacked jurisdiction to hear the claim, *see Higgins v. Dyck-O'Neal, Inc.*, No. 1D15-4784, 2016 WL 3191146, at *9 (Fla. 1st DCA June 9, 2016), this does not support the Plaintiff's contention that the Alleged Debt is invalid.

action under § 1692(e)(2)(A).

### b.      Count Three

Count Three alleges that Dyck violated **15 U.S.C. § 1692(e)(5)**, which prohibits

debt collectors from "threat[ening] to take any action that cannot legally be taken or that

is not intended to be taken," by attempting to collect the Alleged Debt through the

Deficiency Action despite knowing that the Alleged Debt was invalid. (Doc. 27, ¶¶71–74.)

Dyck contends that Plaintiff failed to adequately allege that it made a threat within the

meaning of the FDCPA. (Doc. 32, pp. 11–14.) The Court agrees. Indeed, per Plaintiff's

own allegations, Dyck did not *threaten* to take action—it *did* take action, i.e. it commenced

legal proceedings. Such allegations are insufficient to satisfy a claim under § 1692(e)(5),

which requires that the debt collector actually make a threat. *See McCorriston v. L.W.T.,*

*Inc.*, No. 8:07-cv-160-T-27EAJ, 2008 WL 3243865, at *6 (M.D. Fla. Aug. 7, 2008) (stating

on summary judgment that "the filing of [a] state court lawsuit does not constitute a 'threat'

within the meaning of § 1692(e)(5)"); *see also Townsend v. Quantum3 Grp., LLC*,

535 B.R. 415, 425–26 (M.D. Fla. 2015) (dismissing a § 1692(e)(5) claim because the

allegation that the defendant filed a proof of claim did not equate to an allegation that the

defendant *threatened* to file a proof of claim). As such, Dyck is entitled to judgment on the

pleadings as to Count Three.

### c.      Count Four

Count Four alleges that Dyck violated **15 U.S.C. § 1692(e)(8)**, which prohibits debt

collectors from communicating "to any person credit information which is known . . . to be

false, including the failure to communicate that a disputed debt is disputed," by notifying

the CRAs that Plaintiff owed Dyck the Alleged Debt, which it knew to be invalid. (Doc. 27,

¶¶ 79–81.) For the reasons addressed above in the Court's analysis of Count Two, the Undersigned finds that Plaintiff's allegations reasonably give rise to the inference that Dyck knew that the amount of the Alleged Debt was false. (*See id.* ¶¶ 80–81.) Moreover, in light of the disputed nature of the amount of the alleged deficiency, Dyck's communications to the CRAs regarding the amount of the Alleged Debt constitute actionable misrepresentations. *See DeFrancesco*, 2014 WL 4387570, at *3.*

Additionally, at this stage, the Court accepts as true Plaintiff's allegations that Dyck continued to send negative credit reports without disclosing the disputed nature of the Alleged Debt to the CRAs even after Plaintiff disputed the Alleged Debt in the Deficiency Action. (Doc. 27, ¶¶ 27–28, 31.) As such, Count Four survives the Motion. *See Acosta v. Campbell*, No. 6:04-cv-761-Orl-28DAB, 2006 WL 146208, at *14 (M.D. Fla. Jan. 18, 2006) (holding that "a debt collector may be liable under the FDCPA if it fails to communicate to a consumer reporting agency that a debt is disputed").

### d.  Count Five

Count Five alleges that Dyck violated **15 U.S.C. § 1692(e)(10**), which prohibits debt collectors from using "false representations or deceptive means to collect or attempt to collect any debt," by relying on the Appraisal as grounds for the Deficiency Action despite its knowledge that the Appraisal was not intended to be used to determine the value of the Property. (Doc. 27, ¶¶ 86–89.) At this stage of the proceedings, the Court accepts as true Plaintiff's allegations that: (1) Dyck knew that the Form 1099A evidenced the lack of deficiency balance; (2) the Appraisal was not intended to be used to determine the value of the Property; and (3) Dyck's submission of the Appraisal to the Deficiency Action court in an effort to collect the Alleged Debt was "false and misleading." (*Id.* ¶¶ 87–

89.) As such, the Motion is denied with respect to Count Five.

### e.      Count Six

Count Six alleges that Dyck violated **15 U.S.C. § 1692(f)(1**), which prohibits debt collectors from using unfair or unconscionable means to collect any alleged debt "unless such amount is expressly authorized by the agreement creating the debt or permitted by law," by falsely representing to the CRAs and others that Plaintiff owed it a debt which it knew to be invalid. (*Id.* ¶¶ 95–99.) At this time, the Court accepts as true Plaintiff's allegations that Dyck knew the Alleged Debt was invalid based on the Form 1099A and his knowledge that the Appraisal was not intended identify the value of the Property. (*Id.* ¶¶ 96, 97, 99.) Accordingly, construing the allegations in the light most favorable to Plaintiff, the Court draws the reasonable inference that Dyck's representations to the CRAs and efforts to collect the Alleged Debt constituted unfair and unconscionable means sufficient to state a claim under § 1692(f)(1). Count Six, therefore, survives.

### f.      Count Seven

Count Seven alleges that Dyck violated **15 U.S.C. § 1692(c)(b)**, which prohibits a debt collector from communicating "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by the law, the creditor, the attorney of the creditor, or the attorney of the debt collector," by reporting "that the [Alleged Debt] was valid to the CRAs, the Clerk of Court, the Court, a mortgage broker, a banker, the public at large[,] and to [Plaintiff]": (1) without consent from Plaintiff or the courts; (2) for a purpose other than enforcement of a post-judgment judicial remedy; and (3) without permission by law. (*Id.* ¶¶ 104–106.)

To the extent that Count Seven is predicated on Dyck's communications with the CRAs, the claim survives the Motion. Although the FCRA ordinarily permits communications with consumer reporting agencies, it does *not* permit communications that are known to be inaccurate. *See* 15 U.S.C. § 1681s-2(a)(1). As such, Plaintiff's allegation that Dyck made false and inaccurate communications to the CRAs is sufficient to support a claim under § 1692(c)(b).

Count Seven is otherwise not actionable because: (1) Plaintiff alleges that the CRAs, not Dyck, communicated the negative reports to Plaintiffs mortgage broker and banker (Doc. 27, ¶ 32); (2) § 1692(c)(b) expressly permits Dyck to communicate with Plaintiff regarding the Alleged Debt; and (3) the Court does not construe the filing of the Deficiency Action as a "communication" prohibited by the statute.

## II.   State Law Claims

The FCCPA and FDUTPA claims are predicated on Dyck's: (1) communicating negative reports to the CRAs ("**First Ground**"); and (2) filing of the Deficiency Action ("**Second Ground**"). (*See* Doc. 27, ¶¶ 56–61, 114–117.) The FDUTPA claim is further predicated on Dyck's negative reports to the CRAs "for the purpose of collecting an invalid debt" ("**Third Ground**"). (*Id.* ¶¶ 114–117.)

### a.   FCRA and Litigation Privilege Defenses

To the extent that the claims are predicated on the First Ground—Dyck's alleged negative reports to the CRAs concerning the existence of a debt known to be false—they are preempted by the FCRA. *See Osborne v. Vericrest Fin., Inc.*, No. 8:11-cv-716-T-30TBM, 2011 WL 1878227, at *2–3 (M.D. Fla. May 17, 2011); *see also Menashi v. Am. Home Mortg. Serv., Inc.*, No. 8:11-cv-1346, 2011 WL 4599816, at *2–3 (M.D. Fla. Oct. 4,

2011) ("[The FCRA] pre-empts 'all state causes of action against furnishers of credit information' that regulate credit reporting—including a cause of action under a state law that is not directed expressly to the regulation of credit information (for example, a debt collection act).").

To the extent that the claims are predicated on the Second Ground—Dyck's initiation of the Deficiency Action despite knowing the Alleged Debt did not exist (*see* Doc. 27, ¶¶ 56–58, 115–17)—they survive *FCRA preemption. See Menashi*, 2011 WL 4599816, at \*2–3. However, they nevertheless fail on the Second Ground based on Florida's litigation privilege. "Florida law provides complete judicial immunity 'to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding.'" *Pack v. Unifund CCR Partners, G.P.*, 2008 WL 686800, at \*6 (M.D. Fla. Mar. 13, 2008) (quoting *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007)). The privilege applies to statutory causes of action, including the FCCPA and FDUTPA. *Id.* As Plaintiff concedes,[3] to the extent that the state law claims are predicated on Dyck's filing of the Deficiency Action—which "necessarily occurred during a judicial proceeding and is related to such proceeding"—the claims are barred by the litigation privilege. *See id.*; *see also Davidson v. Capitol One, N.A.*, No. 14-20478-CIV, 2014 WL 3767677, at \*5 (S.D. Fla. July 31, 2014).

To the extent that Plaintiff's FDUTPA claim is predicated on the Third Ground—Dyck's negative reporting *for the purpose of collecting the Alleged Debt*—the claim survives FCRA preemption and otherwise survives the Motion. Although the FCRA

---

[3] (*See* Doc. 35, pp. 6–7 (conceding that Florida's litigation privilege applies to the parts of the FCCPA and FDUPTA claims that relate to the Deficiency Action)).

preempts claims based on the furnishing of information to reporting agencies, "an unfair debt collection practices claim survives [FCRA] preemption if the defendant's debt collecting is separate from the defendant's credit reporting." *Arianas v. LVNV Funding LLC*, No. 8:14-cv-01531-T-27EAJ, 2015 WL 404238, *2 (M.D. Fla. Jan. 8, 2015) (finding that the FCCPA claim was preempted to the extent that it was based on "the furnishing of information to the reporting agencies," but not to the extent that it was based on the defendant's attempt to "collect the debt from [the plaintiff], including by references to providing information to the consumer reporting agencies"). Additionally, courts have rejected defendants' preemption arguments in cases where plaintiffs have specifically alleged that the defendants made false reports to consumer reporting agencies or other third parties in attempt to collect the alleged debt or enforce payments on collectable accounts. *See, e.g.*, *Best v. Bluegreen Corp.*, No. 14-80929-CIV, 2014 WL 6883083, at *3 (S.D. Fla. Dec. 4, 2014) (concluding that an FCCPA claim was not preempted when it was predicated on the defendant's threatening representations to the plaintiffs that it would give negative reports to consumer reporting agencies if the plaintiffs failed to pay their debts); *Welch v. Target Nat'l Bank*, 2:08-cv-705-FtM-29SPC, 2009 WL 1659708, at *1–2 (M.D. Fla. June 15, 2009) (finding that an FCCPA claim was not preempted by the FCRA because the plaintiff specifically alleged that the defendant's conduct could "only be seen as a backdoor method to collect an otherwise non-collectable debt by forcing [the plaintiff] to choose between paying [the defendant's] barred debt or being denied credit).

Specific to the FDUTPA claim, Plaintiff alleges that Dyck had a "practice of making negative credit references to the CRA's for the purpose of collecting an invalid debt."[4] (Doc. 27, ¶ 114.) Based on this allegation, and in accordance with the legal authorities cited herein, the FDUTPA claim survives preemption on the Third Ground.

To summarize, upon consideration of the FCRA and Litigation Privilege Defenses, the FCCPA claim fails entirely and the FDUTPA claim fails in part. Accordingly, Defendant is entitled to judgment on the pleadings as to the FCCPA claim (Count One).

### b.    Count Eight

Having found that the FDUTPA claim is not entirely barred or preempted, the Court turns to Dyck's allegations pertinent to Count Eight. To state a FDUTPA claim for damages, Plaintiff must allege: (1) that Dyck engaged in a deceptive or unfair practice in the course of trade or commerce; (2) that he was aggrieved by such conduct; (3) causation; and (4) actual damages. *Losure v. Capital One Servs., Inc.*, No. 2:05-cv-502-FtM-29SPC, 2006 WL 166520, *3 (M.D. Fla. Jan. 23, 2016); *Benjamin v. Citimortgage, Inc.*, No. 12-62291-CIV, 2013 WL 1891284, *4 (S.D. Fla. May 6, 2013).

Dyck argues that Plaintiff failed to allege that Dyck was engaged in "trade or commerce" as required by FDUTPA. (Doc. 32, pp. 20–22.) The Court agrees. The FDUTPA statute defines "trade and commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible . . . ." Fla. Stat. § 501.203(8). Plaintiff's FDUTPA claim is supported by his allegation that Dyck engaged in unfair and deceptive

---

[4] Plaintiff does not make any such allegations in connection with the FCCPA claim—he merely alleges that Dyck made the negative reports to the CRAs and failed to indicate that the Alleged Debt was disputed. (*See* Doc. 27, ¶¶ 16, 28, 32, 34, 59.)

practices by making negative reports to the CRAs in effort to collect the Alleged Debt. (Doc. 27, ¶ 114.) Courts routinely hold that debt collection efforts do not constitute conduct of trade or commerce for purposes of FDUTPA. *See, e.g.*, *Mesa v. Boston Portfolio Advisors, Inc.*, No. 15-21087-CIV-COOKE, 2015 WL 4380759, *4 (S.D. Fla. July 16, 2016); *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1321–22 (S.D. Fla. 2012); *Benjamin*, 2013 WL 1891284, at *4–5; *Acosta v. James A. Gustino, P.A.*, 6:11-cv-1266-Orl-31, 2012 WL 4052245, *1 (M.D. Fla. Sept. 13, 2012). In the rare instances where a court finds that a debt collection activity constitutes trade or commerce, the activity is actionable only to the extent that it is directed at the plaintiff. *See, e.g.*, *Losure v. Capital One Servs. Inc.*, 2006 WL 166520, at *3 (M.D. Fla. Jan. 23, 2006) (denying a motion to dismiss a FDUTPA claim when the plaintiff alleged that the defendant "attempted to collect the debt by willfully harassing [the plaintiff] at home and at his place of employment through letters and telephone calls").

Here, under either approach, Plaintiff's FDUTPA claim fails. Importantly, this case is distinguishable from *Losure* because, per Plaintiff's allegations, Dyck's conduct in effort to collect the debt—even if it did constitute trade or commerce—was directed at the CRAs, not Plaintiff. (*See* Doc. 27, ¶ 114.) Therefore, Dyck is entitled to judgment on the pleadings as to Count Eight.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Defendant's Motion for Judgment on the Pleadings (Doc. 32) is **GRANTED IN PART AND DENIED IN PART**.

        a.      The Motion is **GRANTED** with respect to Counts One, Three, and

Eight and as otherwise addressed herein. Counts One, Three, and Eight are **DISMISSED**.

      b.      In all other respects, the Motion is **DENIED**.

2.      The Clerk is **DIRECTED** to **TERMINATE** Law Offices of Daniel C. Consuegra, P.A. as a party.

3.      This action will proceed on Counts Two, Four, Five, Six, and Seven.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 8, 2016.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record